FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 28 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
RHASEAN GOVAN,

    **Plaintiff,**

  -against-

THE CITY OF NEW YORK, DETECTIVE ETNA C. SOBERAL, Shield No. 7200, POLICE OFFICER WILSON D. ALBA, Shield No.: 9921, POLICE OFFICER JONATHAN CALDERON, Shied No. 8217, LIEUTENANT COLIN DELANEY, Tax ID No.: 930019, and JOHN and JANE DOE 1 and 2, Individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

    **Defendants.**
----------------------------------------------------------------x

**OPINION & ORDER**

15-cv-7279 (NG) (CLP)

**GERSHON, United States District Judge:**

Plaintiff Rhasean Govan brought this false arrest and malicious prosecution action under 42 U.S.C. § 1983 and New York State law against defendants Detective Etna C. Soberal, Police Officer Wilson D. Alba, Police Officer Jonathan Calderon, and the City of New York. As described below, plaintiff has voluntarily dismissed many of his claims. Defendants now move for summary judgment on all of plaintiff's remaining claims: (1) a § 1983 claim for false arrest against defendants Officer Alba, Officer Calderon, and Detective Soberal; (2) a § 1983 claim for malicious prosecution against these same defendants; and (3) a claim for malicious prosecution under state law against the City of New York. For the reasons set forth below, defendants' motion is granted.

I.  **Facts**

Except as otherwise noted, the facts are undisputed for purposes of this motion. On the evening of February 6, 2014, Officer Alba, Officer Calderon, and Sergeant (now Lieutenant) Colin Delaney[1] conducted a vertical patrol of an apartment building located at 1008 St. Marks Avenue in Brooklyn, New York. At some point, Officer Alba separated from Officer Calderon and Sergeant Delaney to patrol a different area of the building. While on the tenth floor, Officer Alba heard people talking and smelled marijuana. He believed this activity was coming from the eighth floor. He walked down the staircase and waited between the ninth and tenth floors. About two minutes later, a man on the eighth floor began walking up the staircase towards Officer Alba.

When Officer Alba encountered the man, he had a marijuana cigar in his mouth and was holding a clear package containing what the officer believed to be illegal drugs. The man told Officer Alba that he lived in the building. While raising his left hand, Officer Alba told the man to stop. The man smacked the officer's left hand, causing him to drop his radio. Officer Alba pursued the man toward the top of the staircase on the tenth floor and grabbed him by the shoulder. Officer Alba recalled that, during the struggle, the man called out, "mom, mom."

Officer Calderon arrived in the staircase during the altercation between Officer Alba and the man. The officers attempted to place the man under arrest, and they were able to attach a handcuff to one of his wrists. Before they managed to attach the other handcuff to the man's other wrist, a group of people entered the stairwell from a door on the tenth floor and helped the man escape. Officer Alba did not see where the man went, but he observed that the people ran towards Apartment 10-H and shut the door.

---

[1] I refer to Lieutenant Delaney as Sergeant Delaney because he was a sergeant during the events at issue in this case.

2

Officer Alba, accompanied by Officer Calderon and Sergeant Delaney, then left the building to obtain medical treatment for an injury to the tip of his finger, which resulted in significant bleeding, that he sustained during the struggle in the stairwell. En route to the hospital, Sergeant Delaney first learned that an individual had escaped with one handcuff on his wrist. The sergeant then directed the officers to return to the building to continue searching for the escaped man. When the officers returned, they knocked on the door of Apartment 10-H. Miriam Govan lived in the apartment along with her four children, who include plaintiff and Tyquan Woods.

For purposes of this motion, the parties agree that Mr. Woods, plaintiff's brother, was the individual with whom Officer Alba and Officer Calderon struggled in the stairwell. As discussed below, plaintiff was arrested instead.

There is conflicting deposition testimony about plaintiff's interactions with the police after the incident in the stairwell. Plaintiff testified that he was in his mother's bedroom during the incident and that, at some point after the incident, officers knocked on the apartment door and one of them entered the bedroom, where he was watching television.[2] Plaintiff testified that the officer asked to see his hands, he showed them to him, and, when the officer saw that he did not have handcuffs on, the officer left. Plaintiff did not know the officer's name, but his description of the officer could have been a description of Officer Alba.[3]

Naiheem Govan, one of plaintiff's brothers, testified that he was in their mother's apartment after the incident and he saw an officer who was bleeding exit the room that plaintiff

---

[2] Neither party provided the court with the full transcript of plaintiff's deposition and therefore it is not possible to discern how much time had passed, according to plaintiff's testimony, between the incident and the officers' arrival at his mother's apartment.

[3] Plaintiff described the officer as white, about 5'6" or 5'7" and 150 or 160 pounds, with a short haircut. Officer Alba described himself as 5'8" and about 185 or 190 pounds at the time of the incident.

was in, their mother's bedroom. Given this description, Mr. Govan's testimony almost certainly described Officer Alba. Plaintiff's mother, however, provided a different account. Ms. Govan testified that the officers who had been in the stairwell, one of whom was bleeding, came to her apartment right after the incident but did not conduct a search. According to Ms. Govan, different officers returned to the apartment about 20 minutes later, and it was those officers who examined plaintiff's wrists while he was in her bedroom.

Officer Alba, for his part, testified that, after returning to the building and while bleeding, he entered Ms. Govan's apartment and searched it for "every possible place a human can hide." He said, however, that the only man he saw in the apartment was plaintiff's uncle, Joseph Govan. He also testified that he did not notice anyone watching television.

Later on the same day, February 6, 2014, the New York Police Department ("NYPD") initiated an investigation to determine the identity of the man who escaped from Officer Alba and Officer Calderon. While Officer Alba was in the emergency room to obtain treatment for his injured finger, he described the man to a lieutenant as a light-skinned black man with long hair in a ponytail, about 5'4" tall and 125 pounds, and about 20 to 23 years old.

In February 2014, Mr. Woods, a black man, was 22 years old, had dark skin with a red undertone and a mustache, was about 5'7" tall, weighed about 150 pounds, and wore his hair in a ponytail. At that time, plaintiff, also a black man, was 24 years old, had light skin and a mustache, was about 5'5" tall, weighed about 125 pounds, and styled his hair in braids. Based on a prior arrest in January 2014, the NYPD knew that plaintiff lived at 1008 St. Marks Avenue, that he was a black man born in 1989, and that he was about 5'4" and 130 pounds. The NYPD also had plaintiff's mugshot from January 2014.

On February 7, 2014, Detective Soberal was assigned to conduct the 77th Precinct Detective Squad's investigation into determining the identity of the perpetrator. On that day, when questioned by Detective Soberal, Officer Alba described the man as a light-skinned black man.[4] Officer Alba also positively identified plaintiff as the perpetrator in a photo array administered by Detective Soberal.

On that same day, Detective Soberal issued a wanted flyer for the apprehension of plaintiff, based on the belief that plaintiff was a 24-year-old, light-skinned black man, who was approximately 5'4" tall and 130 pounds with black hair styled in a ponytail. The detective also went to Apartment 10-H and spoke to both Miriam Govan and her brother, Joseph Govan.[5] Ms. Govan and Mr. Govan told Detective Soberal that Mr. Woods was the man who had had the altercation with the police officers in the staircase. The NYPD then stationed a police officer outside of the apartment. Ms. Govan testified that this officer was looking for both plaintiff and Mr. Woods. She also testified that, on either February 7 or 8, 2014, she told a detective from the 77th Precinct that she believed Mr. Woods was in Vermont.

On February 8, 2014, Officer Calderon told Detective Soberal that the man who had escaped was a light-skinned black or Hispanic man with facial hair and a ponytail.

On February 12, 2014, plaintiff, on the advice of his attorney, surrendered himself to the NYPD at the 77th Precinct. There, Officer Alba and Officer Calderon positively identified

---

[4] On that same day, Detective Soberal also questioned Sergeant Delaney, who said he was unable to identify the perpetrator.

[5] The fact that Detective Soberal spoke to Joseph Govan, which is first mentioned in plaintiff's Rule 56.1 Statement, is undisputed and therefore I accept it as true. I note, however, that the document cited by plaintiff for this proposition indicates that other, non-party police officers spoke to Mr. Govan on February 7, 2014.

plaintiff as the perpetrator in separate line-ups and Detective Soberal arrested plaintiff.[6] On February 13, 2014, Detective Soberal showed Officer Alba and Officer Calderon each a photo array containing Mr. Woods. Neither of them identified him as the perpetrator.

Plaintiff was prosecuted on charges of assault in the second degree, assault in the third degree, resisting arrest, attempted assault in the third degree, menacing in the third degree, and harassment in the second degree.[7] On December 9, 2014, his criminal charges were dismissed on motion of the Kings County District Attorney's Office. Prior to that, in September 2014, NYPD Internal Affairs Bureau ("IAB") conducted an investigation into whether Officer Alba violated NYPD guidelines concerning his handling of an escaped prisoner.

## II. Procedural History

Plaintiff initiated this action on December 22, 2015. In addition to the claims currently before the court, he asserted, in his amended complaint, a claim of failure to intervene under § 1983 and a claim of malicious prosecution under state law against the officer defendants; claims against Sergeant Delaney; a federal claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and state-law claims against the City for negligent screening, hiring, and retention; negligent training and supervision; and negligence.

At a pre-motion conference held on January 24, 2018, plaintiff agreed to dismiss his claims against the City under *Monell* and for negligent screening, hiring, and retention; negligent training and supervision; and negligence. He also clarified that his only claim against Sergeant Delaney

---

[6] Although defendants argue that plaintiff was identified in the line-ups before he was arrested, the record is not clear as to whether the line-ups or the arrest occurred first.

[7] Initially, according to the paperwork she prepared, Detective Soberal placed plaintiff under arrest for assault on a police officer, petit larceny, resisting arrest, and criminal possession of stolen property. It is not clear why she charged plaintiff with theft offenses.

was for supervisory liable under § 1983. In his opposition to defendants' summary judgment motion, plaintiff agreed to dismiss his claims against all the officer defendants for failure to intervene and state-law malicious prosecution as well as his claim against Sergeant Delaney.

### III. Summary Judgment Standard

Defendants are entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—may preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. While "circumstantial evidence may be. . . sufficient to raise a genuine issue of material fact precluding the grant of summary judgment," *Gayle v. Gonyea*, 313 F.3d 677,

684 (2d Cir. 2002), a party cannot survive a motion for summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).

## IV. Plaintiff's § 1983 Claims

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). There is no dispute here that defendants were acting under color of state law.

### a. Plaintiff's False Arrest Claims

Plaintiff has sued Officer Alba, Officer Calderon, and Detective Soberal for false arrest. Claims for false arrest under § 1983 are analyzed under the same standards as the applicable state law's false arrest tort. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, a plaintiff alleging false arrest must show that "'(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* at 134–35 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). A person who did not effectuate an arrest may still be liable for false arrest if he or she "wrongfully accuses another of criminal conduct and induces or procures that person's arrest." *Wright v. Musanti*, 887 F.3d 577, 588 (2d Cir. 2018) (citing *D'Elia v. 58-35 Utopia Parkway Corp.*, 43 A.D.3d 976, 978 (2d Dep't 2007)).

8

The first three elements of plaintiff's false arrest claim are not in dispute, and therefore the only element at issue is the fourth—whether the arrest was privileged. An arrest is privileged if a defendant possessed probable cause. *Jocks*, 316 F.3d at 135. A police officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A court must look at the totality of the circumstances in determining whether an officer possessed probable cause. *Stansbury v. Wertman*, 721 F.3d 84, 92–93 (2d Cir. 2013).

A mistaken identity can provide the basis for probable cause. *Hill v. California*, 401 U.S. 797, 802–03 (1971). "If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." *Martinez v. City of N.Y.*, 340 Fed. Appx. 700, 701 (2d Cir. 2009).

### i. Officer Alba and Officer Calderon

Plaintiff acknowledges that officers may be shielded from liability if they initiated an arrest based on a mistaken identification. He argues, however, that summary judgment should be denied on his false arrest claims against Officer Alba and Officer Calderon because a trier of fact could conclude that their identifications of plaintiff as the perpetrator were the result of an intentional plan to frame him, not an honest mistake. Plaintiff offers three different arguments—all based on circumstantial evidence—to support his contention. None of them withstand scrutiny.

First, relying on the differences in appearance between plaintiff and Mr. Woods, plaintiff argues that "a reasonably competent police officer," especially one who had been in close contact with the perpetrator in a well-lit stairwell, should have been able to distinguish plaintiff from his

9

brother. But I am not persuaded that, under the circumstances of this case, Officer Alba and Officer Calderon could not have "reasonably believed" that plaintiff was the perpetrator. *See Martinez*, 340 Fed. Appx. at 701.

Plaintiff cites no authority, or evidence in the record, to support the argument that a court should hold a police officer to a higher standard than a civilian when it comes to correctly identifying a perpetrator. Moreover, while the skin tone and hairstyles of plaintiff and Mr. Woods differed in February 2014, they are both black men, just two years apart in age, had mustaches, and had relatively minor differences in height and weight. *See id.* at 701–02 (adopting district court's conclusion that "'slightly more than two inches in height and twenty pounds in weight, as well as different skin tone' . . . is not enough to uphold a claim of false arrest"); *Ortiz v. Vill. of Monticello, N.Y.*, 2012 WL 5395255, at *9 (S.D.N.Y. Nov. 2, 2012) (granting summary judgment to defendants on false arrest claim where, after the suspect was described as a Hispanic man in his twenties with long hair, the defendants mistakenly arrested two Hispanic men in their twenties who were in an apartment where the suspect was believed to live but who did not have long hair).

Plaintiff also argues that a jury could conclude that Officer Alba and Officer Calderon framed him because there was pressure on them to arrest someone to alleviate concerns about an escaped prisoner and because they knew they could not arrest Mr. Woods since he had escaped to Vermont. As evidence of the pressure on the officers, plaintiff cites both Sergeant Delaney's instruction to Officer Alba and Officer Calderon, after the sergeant learned that a man had escaped with a handcuff on him, that they must return to the apartment building rather than get Officer Alba prompt medical attention and the subsequent IAB investigation into the incident.

Even if I accept as true that Officer Alba and Officer Calderon were under more pressure than is typical to make an arrest, plaintiff's theory is unconvincing. There is no evidence showing

that, at the time Officer Alba and Officer Calderon identified plaintiff as the perpetrator, either one of them was aware that Mr. Woods had fled to Vermont. In fact, there is no evidence that Officer Alba or Officer Calderon had even heard of Mr. Woods *before* plaintiff was arrested. The record establishes that Ms. Govan told a detective, not the officers, that Mr. Woods was in Vermont. Unlike facts that assist officers in establishing probable cause, those that exonerate an arrestee cannot be imputed from one officer to another. *Savino v. City of N.Y.*, 331 F.3d 63, 74 (2d Cir. 2003). But, even if such facts could be imputed to Officer Alba and Officer Calderon, Ms. Govan's statement to the detective would not support plaintiff's position. Officer Alba identified plaintiff in a photo array on February 6, 2014, one or two days before Ms. Govan told the detective that Mr. Woods was in Vermont—undermining plaintiff's argument that Officer Alba intentionally misidentified plaintiff to account for Mr. Woods' disappearance.

Finally, plaintiff asserts that, because Officer Alba encountered plaintiff in his mother's bedroom shortly after the incident and saw that he did not have a handcuff on his wrist, a jury could infer that Officer Alba and Officer Calderon knew that plaintiff was not the man who escaped from the stairwell and that these officers thus intentionally misidentified plaintiff. As an initial matter, there is no evidence that Officer Calderon saw plaintiff at any time after the altercation in the stairwell. Therefore, it cannot reasonably be inferred that Officer Calderon's identification of plaintiff was anything other than an honest mistake. As such, he is entitled to summary judgment on the false arrest claim against him. *See Martinez*, 340 Fed. Appx. at 701.

Defendants argue on reply that the record does not establish that Officer Alba observed plaintiff in the apartment after the perpetrator escaped. As discussed above, the testimony conflicts as to whether an officer examined plaintiff's hands and, if so, which officer, but there is evidence that supports plaintiff's position. Officer Alba admitted that he thoroughly searched Ms. Govan's

apartment after returning to it on February 6, 2014. Plaintiff testified that, after the incident, an officer entered his mother's bedroom and examined his wrists for handcuffs. And Naiheem Govan testified that he saw an officer with a bleeding hand walk out of his mother's bedroom when plaintiff was in the room. Construing the evidence in plaintiff's favor, the jury could find that Officer Alba examined plaintiff's wrists after the incident and determined that they did not have a handcuff.

Accepting this fact as true, I nonetheless conclude that Officer Alba had probable cause when he identified plaintiff as the man in the stairwell. To find that Officer Alba intentionally misidentified plaintiff, a jury would have to conclude that the officer studied plaintiff's face when he saw him in the bedroom, even though he was focused on his wrists; that the officer knew that the person he identified in the photo array was the same person he encountered in Apartment 10-H the previous day; and that, only hours after deciding not to arrest plaintiff in his home and without any reason to believe the real perpetrator could not be apprehended, Officer Alba decided to frame plaintiff.

No reasonable jury could reach such a conclusion on the totality of the evidence. *See generally Jimenez v. City of N.Y.*, 2016 WL 1092617, at *3 (E.D.N.Y. Mar. 21, 2016). All of the undisputed evidence in this case indicates that Officer Alba's identification of plaintiff was an honest mistake. Officer Calderon, who never encountered plaintiff in person after the incident, described the perpetrator as light-skinned (when Mr. Woods is dark-skinned) and identified plaintiff in a line-up. Officer Calderon's actions indicate that plaintiff could be mistaken for the person in the stairwell. Indeed, my review of photographs of plaintiff and Mr. Woods submitted by defendants indicates that they do closely resemble each other. *See Nzegwu v. Friedman*, 605 Fed. Appx. 27, 30 (2d Cir. 2015). Finally, if I were to accept plaintiff's claim that the "[m]ost

striking" difference between Mr. Woods and himself was their hairstyle,[8] plaintiff's argument that Officer Alba framed him is undercut by Officer Alba's description of the perpetrator as having a ponytail; this belies any inference of an intentional misidentification.[9] *Cf., e.g., Rhooms v. City of N.Y.*, 2017 WL 1214430, at *6–7 (E.D.N.Y. Mar. 31, 2017) (summary judgment denied where the evidence included direct proof of intentional misconduct); *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 341–42 (S.D.N.Y. 1999) (summary judgment denied where there was significant, uncontradicted evidence supporting plaintiff's version of facts).

In sum, I conclude that Officer Alba and Officer Calderon had probable cause when they identified plaintiff as the perpetrator in this case. Summary judgment is granted as to plaintiff's false arrest claim against both officers.

### ii. Detective Soberal

Detective Soberal, the arresting officer, arrested plaintiff after Officer Alba provided a description that resembled plaintiff to a non-party lieutenant on February 6, 2014 and a similar description to Detective Soberal on February 7, 2014; after Officer Alba identified plaintiff in a photo array administered by Detective Soberal on February 7, 2014; and after Officer Calderon provided a description of the perpetrator to her on February 8, 2014 that matched plaintiff's

---

[8] According to their mother, Mr. Woods' hair was unbraided and in a ponytail at the time of the incident while plaintiff's hair was in braids. However, the mugshot of plaintiff from January 2014 shows him wearing flat braids along his scalp that keep his hair out of his face, in much the same way that a ponytail would.

[9] My decision is based only on the reasonable inferences a jury could draw that support plaintiff's position. I therefore do not rely on inferences that could be drawn in defendants' favor, including the fact that, as the victim in this case, Officer Alba had incentive to identify correctly the man who injured his finger—not to frame an innocent man.

physical appearance.[10] Based on these undisputed facts, Detective Soberal is entitled to summary judgment on plaintiff's false arrest claim.

Plaintiff argues that Detective Soberal's decision to arrest him was objectively unreasonable because she should have doubted the veracity of Officer Alba and Officer Calderon. Plaintiff cites to Joseph Govan's and Miriam Govan's statements to Detective Soberal that Mr. Woods, not plaintiff, was involved in the stairwell altercation. And he points out that, after they provided the detective with this information, a police officer was placed outside of Ms. Govan's apartment to capture Mr. Woods. Plaintiff further contends that Detective Soberal should have realized that the officers' identification of plaintiff was intentionally incorrect when she compared photographs of Mr. Woods and plaintiff.

Plaintiff's arguments are not convincing. An officer has probable cause if he or she acted based on information received from someone, typically the victim or an eyewitness, unless there is reason to doubt that person's truthfulness. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). And once an officer has probable cause to arrest a suspect, she is "not required to investigate a claim of innocence—even a claim of innocence that is based on mistaken identity." *Martinez*, 340 Fed. Appx. at 702; *see Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Here, Officer Alba's identification of plaintiff as the person who attacked him in the stairwell provided Detective Soberal with probable cause. Indeed, "his credibility was buttressed by the fact that [he was] a law enforcement officer." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). It was further reinforced by Officer

---

[10] As discussed above, the record is not clear as to whether plaintiff was arrested before or after Officer Alba and Officer Calderon each identified plaintiff in a line-up, and therefore I do not factor in these identifications in my determination as to whether Detective Soberal had probable cause to arrest plaintiff.

14

Calderon's description of the perpetrator as a light-skinned black or Hispanic man—a description that more accurately describes plaintiff than his brother. Finally, Officer Alba's identification of plaintiff was even more credible because the man in the stairwell had been shouting "mom" and had been aided by people in Apartment 10-H, where plaintiff and his mother lived.

That plaintiff's family members—whose personal relationships with plaintiff and Mr. Woods may have motivated them to mislead the police—told Detective Soberal that Mr. Woods was the perpetrator does not alter my finding that Officer Soberal had probable cause to arrest plaintiff. Nor does any perceived difference in resemblance between plaintiff and Mr. Woods, or the fact that there is some indication that the police were looking for Mr. Woods when they stationed an officer outside Ms. Govan's apartment. (Notably, according to Ms. Govan's deposition testimony, the officer was also looking for plaintiff.) So long as a complaining witness provided Detective Soberal with reasonable cause to arrest plaintiff, and the witness was sufficiently credible, a court should not question the arresting officer's assessment of the other facts presented to her. *Kanderskaya v. City of N.Y.*, 11 F. Supp. 3d 431, 438 (S.D.N.Y. 2014). Here, Detective Soberal reasonably credited Officer Alba's identification of plaintiff and Officer Calderon's descriptions of someone who resembled the plaintiff over the reports of plaintiff's family members.[11]

---

[11] To support their argument that Detective Soberal had probable cause to arrest plaintiff, defendants rely in part on the "fellow officer rule," which establishes that probable cause may be found based on the knowledge of all of the law enforcement officials involved in the investigation, not just the arresting officer. *See Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Because Officer Alba was the complainant in this case and not merely a fellow officer, my conclusion that Detective Soberal possessed probable cause is not based on this rule. However, that the information known to Officer Alba and Officer Calderon, as well as to the non-party lieutenant with whom Officer Alba spoke, about the perpetrator may be imputed to Detective Soberal strengthens my conclusion.

Summary judgment is granted as to plaintiff's claim of false arrest against Detective Soberal.

### b. Plaintiff's Malicious Prosecution Claims against the Officer Defendants

Defendants also move for summary judgment on plaintiff's malicious prosecution claim against all three officers. To prevail on a claim of malicious prosecution, a plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff; (2) that the defendant lacked probable cause to believe the proceeding could succeed; (3) that the defendant acted with malice; (4) that the prosecution was terminated in the plaintiff's favor; and (5) there was a post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

"The existence of probable cause is a complete defense to a claim of malicious prosecution[.]" *Delamota v. City of New York*, 683 Fed. Appx. 65, 66 (2d Cir. 2017). But the existence of probable cause is measured "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). Information obtained after the arrest, but before the commencement of proceedings, is thus relevant to the determination of probable cause for a malicious prosecution claim. *Id.*

Plaintiff points to no additional facts to show that probable cause dissipated after his arrest, and thus my conclusion that there was probable cause to arrest plaintiff resolves his malicious prosecution claims. *Jimenez*, 2016 WL 1092617, at *4. In fact, the likelihood that plaintiff was the perpetrator only increased after his arrest, when Officers Alba and Calderon each viewed a photo array containing Mr. Woods and did not identify him as the perpetrator.

Defendants are granted summary judgment on plaintiff's malicious prosecution claims against Officer Alba, Officer Calderon, and Detective Soberal.

V.  **Plaintiff's Malicious Prosecution Claim against the City under State Law**

As discussed above, plaintiff has voluntarily dismissed all of his claims under state law other than his malicious prosecution claim against the City based on the doctrine of respondeat superior. Because a municipality cannot be held vicariously liable in the absence of underlying liability, plaintiff's claim against the City is dismissed. *See Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 237 (E.D.N.Y. 2014).

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is granted in full. The Clerk of Court is directed to enter judgment in favor of defendants on all claims and close the case.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

May 28, 2019
Brooklyn, New York